UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CHARIE CLIFFORD,<br><br>    Plaintiff,<br><br>v.<br><br>DEWBURY HOMES and HOUSING AUTHORITY SALT LAKE COUNTY,<br><br>    Defendants. | **REPORT AND RECOMMENDATION TO DISMISS, IN PART, PLAINTIFF'S AMENDED COMPLAINT (DOC. NO. 20)**<br><br>Case No. 2:18-cv-00522-RJS-DAO<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

On June 29, 2018, pro se Plaintiff Charie Clifford, proceeding *in forma pauperis*, filed this action on behalf of herself and her minor child against DewBury Homes ("DewBury") and the Housing Authority of Salt Lake County ("Housing Authority"). (Am. Compl., Doc. No. 20.) Because Ms. Clifford lacks standing to make claims on behalf of her child, this court lacks subject-matter jurisdiction over some of the claims in the amended complaint[1] (hereinafter the "Complaint"), and several others fail to state a claim on which relief may be granted, the undersigned[2] RECOMMENDS the district judge DISMISS the complaint, in part.

---

[1] Although the Complaint references several exhibits, none were filed with the court.

[2] On July 10, 2018, the district judge referred this case to Magistrate Judge Furse under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 5.) On May 15, 2021 the case was reassigned to the undersigned magistrate judge. (Doc. No. 37.)

1

## BACKGROUND

On December 14, 2012, Ms. Clifford entered a HARP housing assistance program contract with the Housing Authority. (Am. Compl. 10,[3] Doc. No. 20.) The HARP program is funded through the Home Investment Partnership Program and is designed to transition individuals out of homelessness. (*Id.*) Although the relationship between the defendants is not entirely clear from the Complaint, it appears the housing assistance program was run by the Housing Authority and DewBury served as the landlord. (*Id.*) Ms. Clifford raises various grievances against the defendants related to her experience with the HARP housing assistance program.

Some of Ms. Clifford's claims are clearer than others, but she appears to allege the following:

    1. Her rental unit at 2770 South 2805 West in West Valley City, Utah, failed to meet the required Housing and Urban Development ("HUD") safety standards—and the defendants falsely claimed the unit did meet these standards. (*Id.* at 10–11, 17.)

    2. DewBury improperly modified Ms. Clifford's lease in violation of 24 C.F.R. 247.4 part (d). (*Id.* at 10, 18.)

    3. Ms. Clifford was improperly evicted in 2014 from the West Valley property pursuant to a "no cause" eviction notice, and the Housing Authority failed to provide proper remedial help. (*Id.* at 11, 18.)

    4. The Housing Authority improperly terminated Ms. Clifford's housing assistance. (*Id.* at 12, 21.)

---

[3] The pagination refers to the consecutively numbered ECF page number located at the top of the filings.

5. Ms. Clifford was improperly removed from the waiting list for permanent Section 8 housing and never received it. (*Id.* at 12, 20.)

6. Ms. Clifford was discriminated against and treated disparately. (*Id.* at 13, 15, 26.)

7. The Housing Authority failed to forward the remainder of Ms. Clifford's security deposit to another rental housing group, the Academy Parks Projects. (*Id.* at 22–23.)

8. Brandy Olsen of DewBury made a false statement regarding the "no cause" eviction which caused Ms. Clifford to be denied future housing assistance. (*Id.* at 15, 26, 28.)

9. Lastly, Ms. Clifford makes various allegations against nonparties Academy Parks and the Midvale shelter, including harassment, improper eviction, trespass, conversion, and breach of contract. (*Id.* at 12–14, 23, 25–26.)

Ms. Clifford appears to style her Complaint, in part, as an administrative appeal. (*Id.* at 4, 14.)

Ms. Clifford filed her original complaint on July 3, 2018. (Compl., Doc. No. 3.) At that time, she filed a motion to appoint counsel, (Doc. No. 4), which was denied, (Doc. No. 6). After the Housing Authority filed an answer to the complaint, (Doc. No. 7), Ms. Clifford filed a motion to amend her complaint, (Doc. No. 13). The court granted this motion. (Doc. No. 19.) In December 2018, Ms. Clifford filed another motion to appoint counsel. (Doc. No. 28.) The then-assigned magistrate judge granted this motion in part, appointing counsel "for the limited purpose of consulting with Ms. Clifford and assisting her in determining how to best proceed in this case." (Order Granting in Part Mot. for Appointment of Counsel 3, Doc. No. 30.) Andrew M. Morse ultimately accepted this pro bono appointment. At a hearing on June 4, 2020, Ms. Clifford indicated she had consulted with Mr. Morse about her case, but she was unsure whether he would continue to represent her. (*See* Doc. No. 39.) Ms. Clifford later indicated her intent to

proceed to pro se, (*see* Doc. No. 43), and the pro bono representation by Mr. Morse was terminated, (Doc. No. 45).

## ANALYSIS

All but two of Ms. Clifford's claims must be dismissed, due to lack of standing, lack of subject-matter jurisdiction, or because Ms. Clifford fails to state a claim upon which relief may be granted and it would be futile to give her the chance to amend her complaint.

**I.      Ms. Clifford lacks standing to bring claims on behalf of her child.**

As an initial matter, Ms. Clifford brings this suit on her own behalf and on behalf of minor child. This raises the issue of standing. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Id.* at 561. "Apart from this minimum constitutional mandate," there are "other limits on the class of persons who may invoke the courts' decisional and remedial powers." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). For instance, even where a plaintiff has otherwise met the "case or controversy" requirement, she "generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Id.*

Ms. Clifford is not an attorney and has not retained an attorney in this case. She had pro bono representation for a time, but this representation has terminated. Although Ms. Clifford may pursue her own claims pro se, she may not pursue claims on behalf of her child. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C.

§ 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."); *Gallacher v. Kisner*, No. 2:08-cv-845, 2009 U.S. Dist. LEXIS 68000, at *25–26 (D. Utah June 25, 2009) (unpublished) ("Because Plaintiff is not an attorney, has not retained an attorney, and is proceeding pro se in this case, he cannot pursue claims on behalf of his son."). Accordingly, Ms. Clifford may only assert claims on her own behalf. Any claim she brings on behalf of her minor child must be dismissed without prejudice for lack of standing.

The undersigned RECOMMENDS the district judge dismiss all claims brought on behalf of the minor child as a plaintiff in this case.

## II. This court lacks subject-matter jurisdiction over Ms. Clifford's core claims.

Ms. Clifford's primary claims are that the defendants provided housing which failed to meet the safety requirements of Section 8 housing[4] or the HUD general program requirements and that they falsely represented her housing did meet these standards. These claims must be dismissed without prejudice because this court lacks subject-matter jurisdiction.

As a threshold matter, federal courts are courts of limited jurisdiction, meaning they "may only hear cases when empowered to do so by the Constitution and by act of Congress." *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015). Subject-matter jurisdiction "is a constitutional prerequisite to hearing a case." *Id.* Because it cannot be waived, a court "always [has] an independent obligation" to determine whether subject-matter jurisdiction exists, regardless of the stage of the litigation. *Id.* Generally, it is the plaintiff's burden to demonstrate jurisdiction. *Gallup Med Flight, LLC v. Builders Tr. of N.M.*, 240 F. Supp. 3d 1161, 1194

---

[4] It is not clear whether Ms. Clifford was in Section 8 housing, but this detail is irrelevant where, as detailed below, Section 8 standards do not create a private cause of action.

(D.N.M. 2017). Federally, there is a presumption against jurisdiction. *Penteco Corp. Ltd. P'ship-1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). A plaintiff must establish the complaint implicates a federal question by raising a claim "arising under the Constitution, laws, or treaties of the United States." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). Or the plaintiff must show "complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004). When the court lacks subject-matter jurisdiction over a claim, it must be dismissed without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).

A. <u>Failure to Meet Housing Quality Standards and False Claims</u>

Ms. Clifford contends she entered into a lease agreement with the Housing Authority and DewBury for a unit at 2770 South 2805 West, in West Valley City, Utah. (Am. Compl. 10, Doc. No. 20.) According to Ms. Clifford, this property failed to meet the required safety standards. (*Id.* at 10–11, 17.) The violations include the existence of black mold and hazardous levels of carbon monoxide, which Ms. Clifford alleges caused injuries to she and her son. (*Id.*) Ms. Clifford appears to base two separate claims on of this allegation. First, she claims the Housing Authority and DewBury improperly allowed her to enter a lease, knowing the unit failed to meet the certification requirements. (*Id.*) Second, she claims the Housing Authority and DewBury knowingly and falsely represented her housing rental met the required standards. (*Id.*)

The first part of this claim is that the defendants provided housing which failed to meet the safety requirements of Section 8 housing[5] or the HUD general program requirements. (Am.

---

[5] It is not clear whether Ms. Clifford was in Section 8 housing, but this detail is irrelevant where, as detailed below, Section 8 standards do not create a private cause of action.

Compl. 10, Doc. No. 20.) These sections establish standards to ensure housing is decent, safe, sanitary, and in good repair. *See* 24 C.F.R. § 982.401 (Section 8 housing standards); 24 C.F.R. § 5.703 (general HUD program requirements). However, neither of these sections creates a private cause of action.[6] Section 8 of Housing Act "does not expressly grant a private right of action to individuals who . . . are suing HUD over the poor quality of their Section 8 housing." *Montgomery v. City of N.Y.*, 2010 U.S. Dist. LEXIS 94527, at *10 (S.D.N.Y. Sep. 7, 2010) (unpublished); *see also Hunt v. S.C. State Hous. Fin. & Dev. Auth.*, 3:18-cv-02682, 2019 U.S. Dist. LEXIS 156469, at *16 (D.S.C. Sep. 13, 2019) (unpublished) ("Federal housing regulations do not provide for a private action by [Section 8] participants against a landlord for quality of housing standards."). Similarly, the general HUD program requirements do not create private causes of action. *See Mercer v. N.Y.C. Hous. Auth.*, 2021 U.S. Dist. LEXIS 12307, at *11 (S.D.N.Y. Jan. 22, 2021) (unpublished) ("[N]either the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, nor 24 C.F.R. § 5.703 creates an enforceable individual right."). Where there is no private cause of action,[7] the court lacks subject-matter jurisdiction. *See Greene v. Hous. Auth. of City of Los Angeles*, 690 F. App'x 617, 617–18 (10th Cir. 2017) (unpublished) (affirming dismissal for lack of subject-matter jurisdiction over claims that the housing authority failed to give the plaintiff notice his apartment was unsafe and failed to correct those issues).

Second, Ms. Clifford alleges the defendants' actions constitute a false statement in violation of 24 C.F.R. 28.1 *et seq.*, the Program Fraud Civil Remedies Act. (Am. Compl. 10, Doc. No. 20.) However, Ms. Clifford has not established this act creates a private cause of

---

[6] Ms. Clifford does not allege violations of provisions regarding lead-based paint hazards, which courts have found give rise to private causes of action. *See, e.g., Hurt v. Philadelphia Hous. Auth.*, 806 F. Supp. 515, 525–26 (E.D. Pa. 1992).

[7] There is no suggestion of diversity jurisdiction in this case.

action. This section establishes "administrative procedures for imposing civil penalties and assessments" against individuals who make false statements to federal authorities or agents. 24 C.F.R. § 28.1(a). Nothing in this stated purpose suggests a private cause of action. *See also* 24 C.F.R. § 28.15(a) ("HUD may initiate a Program Fraud Civil Remedies Act (31 U.S.C. 3801) case against a respondent only upon an investigation by the Inspector General or his or her designee."). Similarly, nothing in 31 U.S.C. § 3801, regarding false claims and statements, suggests a private cause of action. *Dinkins v. Region Ten CSB*, No. 3:19-cv-00030, 2019 U.S. Dist. LEXIS 125962, at *3 (W.D. Va. July 29, 2019) (unpublished) (noting the court previously dismissed plaintiff's claim under 31 U.S.C. § 3802 "because the statute did not create a private right of action"). Where there is no private cause of action, the court lacks subject-matter jurisdiction to decide this claim.

Where no private cause of action arises from the any failure to meet the safety requirements of Section 8 housing[8] or the HUD general program requirements, the court lacks subject-matter jurisdiction over these claims. The same can be said for any alleged violation of the Program Fraud Civil Remedies Act. For this reason, the undersigned RECOMMENDS the district judge dismiss these claims without prejudice.

### III. All but two of Ms. Clifford's remaining claims should be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Of Ms. Clifford's remaining claims, it is clear Ms. Clifford cannot prevail on the facts she has alleged in most instances. Only two claims survive: (1) the claim that DewBury violated HUD regulations when modifying Ms. Clifford's lease and (2) the claim that the Housing Authority and DewBury violated eviction requirements when they evicted her in 2014. Given

---

[8] It is not clear whether Ms. Clifford was in Section 8 housing, but this detail is irrelevant where, as detailed below, Section 8 standards do not create a private cause of action.

that Ms. Clifford has already amended her complaint once and has been given the assistance of a pro bono attorney, it would be futile to give her the opportunity to again amend her complaint.

Whenever the court authorizes a party to proceed *in forma pauperis*, the court "shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Dismissal is appropriate when "it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would be futile to give [her] an opportunity to amend." *Phillips v. Layden*, 434 F. App'x 774, 775 (10th Cir. 2011) (unpublished) (alterations in original) (internal quotation marks omitted).

When determining whether a complaint fails to state a claim for relief under section 1915, the court employs the standard for analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007). To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The court accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). But the court need not accept conclusory allegations as true. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

Because Ms. Clifford proceeds pro se, her filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. Still, a pro se plaintiff must "follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted). This means, a pro se "plaintiff still has the burden of alleging sufficient facts on which a recognized legal claim could be based." *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted). While the court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, h[er] confusion of various legal theories, h[er] poor syntax and sentence construction, or h[er] unfamiliarity with pleading requirements[,]" *Hall*, 935 F.2d at 1110, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal quotation marks omitted).

To cover some general concepts: Ms. Clifford cites the policies and purposes behind various statutes and regulations throughout her Complaint. (*See generally* Am. Compl., Doc. No. 20.) However, policy statements and causes of action are not the same thing. Even if the defendants' actions violated or contradicted a statute's policy statement, it does not automatically follow that the defendants are liable. *See Johnson v. City of Detroit*, 446 F.3d 614, 625–26 (6th Cir. 2006) (noting section 1437 of the Fair Housing Act "merely presents broad policy statements" but is "devoid of 'rights-creating language'").

With this framework in mind, the court addresses each of Ms. Clifford's remaining allegations.

A. <u>Lease Modification</u>

First, Ms. Clifford alleges DewBury improperly modified her lease without the required notice or approval in violation of 24 C.F.R. § 247.4(d). (Am. Compl. 10, 18, Doc. No. 20.) Specifically, she claims her lease was automatically renewed on a month-to-month basis and her rent was increased.[9] Section 247.4 permits a landlord to "modify the terms and conditions of the rental agreement" with prior approval of HUD. 24 C.F.R. § 247.4(d). To modify, the landlord must notify the tenant at least thirty days before the final date on which tenant has a right to terminate the tenancy—and must provide certain documents, such as a revised rental agreement or addendum. *Id.* Ms. Clifford contends none of this occurred.

Similar allegations have been found to give rise to a cause of action. In the District of Connecticut, for example, a plaintiff alleged an increased utility charge was illegal because the defendants failed to obtain pre-approval from HUD and failed to serve notice. *Feir v. Carabetta Enter., Inc.*, 459 F. Supp. 841, 846 (D. Conn. 1978). The court adjudicated the claim on the merits. *See id.* at 847 (awarding summary judgment to defendants); *see also HUD Tenants Coal. v. U.S. HUD*, No. 05-3283, 2006 U.S. Dist. LEXIS 90621, at *3–4 (D.N.J. Dec. 15, 2006) (unpublished) (brought pursuant to 24 C.F.R. § 245.310, which requires specific documents to be submitted to tenant prior to requesting HUD approval); *Thompson v. Washington*, 497 F.2d 626, 641 (D.C. Cir. 1973) (reversing a dismissal because the tenants "are entitled by the Housing Act to notice of proposed rent increases and an opportunity to respond in writing before rent increase proposals are forwarded to HUD for approval"). Because Ms. Clifford adequately states a claim of improper lease modification under 24 C.F.R. § 247.4(d), this claim survives § 1915 review.

---

[9] Section 247.4(d) notes increase in rent is governed by 24 C.F.R. parts 245 and 246. Each of these provisions set out standards for increasing maximum permissible rents. *See* 24 C.F.R. §§ 245.310, 245.325, 246.7.

11

B. <u>Improper Eviction</u>

Next, Ms. Clifford asserts she was improperly evicted in 2014 from the West Valley property pursuant to a "no cause" eviction notice. (Am. Compl. 11, Doc. No. 20.) She also claims the Housing Authority failed to help during this process. (*Id.*) Ms. Clifford seems to suggest this action violates the requirements of relocation assistance and "assurances of availability of housing" under a litany of statutes, because it caused Ms. Clifford to become homeless for three months. (*Id.*) However, the claim that the Housing Authority violated the housing availability requirement does not state a cause of action. Nothing in the record suggests Ms. Clifford was displaced or evicted due to a federal agency's program or project. *See* 42 U.S.C. § 4621. To state a claim upon which relief may be granted, Ms. Clifford would need to establish a federal agency's project or program caused her to be relocated. Because she has not done so, despite having once amended her complaint, and having the assistance of an attorney, this claim should be dismissed.

Ms. Clifford also cites 24 C.F.R. § 247.4, which contains the requirements for notice before terminating tenancy. (Am. Compl. 11, Doc. No. 20.) While her primary grievance appears to be the Housing Authority's failure to provide new housing, the Complaint may be interpreted to claim the defendants did not give proper notice for the no-cause eviction. Section 247.4 requires a termination notice stating with "specificity" the reasons for termination to be served at least thirty days before the notice goes into effect. 24 C.F.R. § 247.4(c). Ms. Clifford contends she received less than thirty days' notice. (Am. Compl. 11, Doc. No. 20.) Further, liberally construed, the Complaint may be read to assert a claim of violation of the Home Investment Partnerships Program's eviction requirements. For evictions under the Home Investment Partnerships Program, a landlord "may not terminate the tenancy" except for specific

12

reasons, including "serious or repeated violation of the terms and conditions of the lease; for violation of applicable Federal, State, or local law; for completion of the tenancy period for transitional housing or failure to follow any required transitional housing supportive services plan; or for other good cause." 24 C.F.R. § 92.253(c). To terminate a tenancy, "the owner must serve written notice upon the tenant specifying the grounds for the action at least 30 days before the termination." *Id.* Because Ms. Clifford contends the eviction was without cause and notice was not served at least thirty days prior to its effective date, this claim survives § 1915 review.

Accordingly, Ms. Clifford's claim that the 2014 "no cause" eviction violates federal notice requirements survives § 1915 review. However, Ms. Clifford's claim regarding housing availability requirements does not. The undersigned RECOMMENDS "housing availability" claim be dismissed; amendment would be futile where Ms. Clifford already had the opportunity to amend and had the assistance of counsel for a portion of her case.

C. Improper Termination of Housing Assistance

Next, Ms. Clifford claims the Housing Authority improperly terminated her housing assistance without thirty days' notice, as required by her contract. (Am. Compl. 12, 21, Doc. No. 20). Apparently, on March 12, 2015, Ms. Clifford moved into a property located at 2757 South 9000 West in Magna, Utah. (*Id.* at 11.) Problems soon arose with this unit, including flooding, yet the landlords refused to replace the damaged carpet and black mold began to grow. (*Id.* at 11–12.) Ms. Clifford claims she felt the unit was "no longer safe, suitable, [or] sanitary" and the rent was no longer reasonable. (*Id.* at 12.) On August 3, 2015,[10] after inquiring into terminating the lease early, Ms. Clifford was told by the Housing Authority what steps she needed to take to

---

[10] Although the Complaint notes a date of August 3, 2016, this appears to be a typographical error as the related dates are all in August of 2015.

13

initiate early termination. (*Id.*) Ms. Clifford alleges she took those steps, included having the landlord sign certain documents to terminate the lease, on August 5, 2015. (*Id.*) Ms. Clifford indicates she then received an email notifying her of the termination of her housing assistance and giving her the option to move into Academy Park, a public housing unit. (*Id.*)

Ms. Clifford appears to claim the Housing Authority improperly terminated her lease at the Magna location, without giving thirty days' notice. (*Id.* at 12, 21.) But Ms. Clifford also acknowledges she asked for this lease to be terminated. (*Id.* at 12.) This assertion undermines Ms. Clifford's claim that the actions taken by the Housing Authority were legally deficient. Because this claim fails to state of cause of action, the undersigned RECOMMENDS it be dismissed, especially where Ms. Clifford already amended her complaint, and had the assistance of counsel for a time during this case.

D. <u>Section 8 Housing</u>

Ms. Clifford next alleges she was improperly removed from the Section 8 waiting list when she entered a lease with Academy Parks. (Am. Compl. 12, Doc. No. 20.) She also claims she never received permanent Section 8 housing, despite completing all her therapy goals. (*Id.* at 20.) In the first place, it is unclear which named defendant, if any, Ms. Clifford believes removed her from the wait list. But even if Ms. Clifford had tied a defendant to this claim, she fails to allege how removal from the Section 8 housing wait list gives rise to a cause of action. It is similarly unclear how Ms. Clifford's claim regarding permanent Section 8 housing gives rise to a cause of action. She does not allege she was improperly denied permanent Section 8 housing—just that she had not received it as of the filing of her Complaint, despite completing her therapy goals. (*Id.*) However, Ms. Clifford makes no claim that permanent Section 8

14

housing was guaranteed upon completion of these goals. Accordingly, these claims fail to state a cause of action and the undersigned RECOMMENDS the claims be dismissed.

    E. <u>Discrimination</u>

Ms. Clifford contends she has been discriminated against and treated disparately. (Am. Compl. 13, 26, Doc. No. 20.) However, she appears to claim Academy Parks, not the named defendants, discriminated against her. (*Id.*) To the extent any allegations could be construed against the named defendants, the Complaint fails to state a cause of action. Specifically, Ms. Clifford fails to claim she was treated differently because of her race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. § 3604 (describing prohibited discriminatory acts under the Fair Housing Act). Nor does she claim her allegations of hostile-environment harassment were "because of race, color, religion, sex, familial status, national origin or handicap." 24 C.F.R. § 100.600. Because Ms. Clifford fails to state a claim for discrimination upon which relief may be granted, despite have already amended her complaint and conferred with an attorney, the undersigned RECOMMENDS this claim be dismissed.

    F. <u>Security Deposit</u>

Ms. Clifford also complains about the Housing Authority's handling of her security deposit. Academy Parks required a $300 security deposit. (Am. Compl. 13, Doc. No. 20.) Ms. Clifford paid $50 herself and received the remaining amount from a grant facilitated by the Housing Authority. (*Id.* at 13, 22–23.) Apparently, Academy Parks never received the $250 from the Housing Authority; Ms. Clifford suggests the Housing Authority retained the money. (*Id.* at 22–23.)

Ms. Clifford claims this is a violation of 18 U.S.C. § 1012. (*Id.* at 23.) However, Title 18 relates to criminal acts and Section 1012 pertains to criminal fraud and false statements. 18

15

U.S.C. § 1012. And criminal statutes "cannot be enforced in a private civil action." *Gallacher*, 2009 U.S. Dist. LEXIS 68000, at *13 (D. Utah June 25, 2009) (unpublished). Therefore, Ms. Clifford "lacks standing to assert that a party has violated criminal laws." *Rojas v. Meinster*, No. 19-cv-01896-LTB-GPG, 2019 U.S. Dist. LEXIS 229829, at *4 (D. Colo. Sep. 10, 2019); *see also Diamond v. Charles*, 476 U.S. 54, 64 (1986) (finding private individuals cannot compel enforcement of criminal law). Ms. Clifford cannot recover civil damages for the defendants' alleged violation of a criminal statute. *Shaw v. Neece*, 727 F.2d 947, 949 (10th Cir. 1984). Because Ms. Clifford's claim fails to state a cause of action upon which relief may be granted, the undersigned RECOMMENDS this claim be dismissed.

    G. Defamation/Libel

Ms. Clifford also makes a claim of defamation. Apparently, she applied for assistance from Utah Nonprofit Housing and for a lease at Stonehenge Apartments in Logan, Utah. (Am. Compl. 26, Doc. No. 20.) Ms. Clifford claims Brandy Olsen of DewBury made a false statement to Utah Nonprofit Housing which resulted in Ms. Clifford being denied assistance. (*Id.* at 15, 26, 28.) According to Ms. Clifford, Ms. Olsen told Utah Nonprofit Housing that DewBury evicted Ms. Clifford because of "erratic behavior" and that she caused $800 worth of damage to the unit. (*Id.* at 26.) This was contradictory to the reasoning DewBury provided in the no-cause eviction, which was based on the building's structural issues. (*Id.*) Further, Ms. Clifford claims Ms. Olsen examined the unit and returned a portion of the security deposit after informing Ms. Clifford everything looked fine. (*Id.*) Ms. Clifford contends Ms. Olsen's conduct amounts to libel. (*Id.*)

Ms. Clifford fails to state a claim upon which relief may be granted because Ms. Olsen is not a named defendant in the case. Ms. Clifford does not assert this claim against DewBury

directly or by alleging vicarious liability. Nor does she allege facts sufficient to show DewBury could be vicariously liable for Ms. Olsen's comments, by showing Ms. Olsen was an employee of DewBury, her conduct in making the statement was "of the general kind [she] is employed to perform," the conduct "occur[ed] within the hours of the employee's work and the ordinary spatial boundaries of the employment," or her conduct was "motivated, at least in part, by the purpose of serving [DewBury's] interest." *Newman v. White Water Whirlpool*, 2008 UT 79, ¶ 9, 197 P.3d 654, 657–58 (internal quotation marks omitted).

Where Ms. Clifford cannot prevail on the facts she has alleged despite having amended her complaint and having the assistance of counsel for a time, the undersigned RECOMMENDS this claim be dismissed with prejudice for failure to state a claim upon which relief may be granted.

H.  Administrative Appeal

Ms. Clifford appears to style her Complaint, in part, as an administrative appeal of a hearing related to her 2016 eviction from Academy Park. (Am. Compl. 4, 14, Doc. No. 20.) However, the Administrative Procedures Act "authorizes judicial review only of final agency actions." *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014) (internal quotation marks omitted). To be final, the action "must mark the consummation of the agency's decision-making process, and must either determine rights or obligations or occasion legal consequences." *Id.* (internal quotation marks omitted).

Ms. Clifford asserts no facts showing any agency action, let alone a final agency action. She makes a cursory reference to a hearing before a hearing officer but does not specify whether the hearing was through a federal agency or what the hearing officer decided, if anything. It appears the hearing may have been a mediation with the Salt Lake Community Action Program,

resulting in a mediation agreement. (Am. Compl. 14, Doc. No. 20.) Because nothing in the record suggests the Salt Lake Community Action Program is a federal agency or that there was a final agency action, the undersigned RECOMMENDS this claim be dismissed for failure to state a claim upon which relief may be granted.

   I.   Claims against Nonparties Academy Parks and Midvale Shelter

Lastly, Ms. Clifford makes various allegations against nonparties Academy Parks and the Midvale shelter, including harassment, improper eviction, trespassing, conversion, and breach of contract. (*See, e.g.*, Am. Compl. at 12–14, 23, 25–26; Doc. No. 20). Neither Academy Parks nor the Midvale shelter are named defendants and Ms. Clifford does not contend their actions can be imputed to the Housing Authority or DewBury. Where Ms. Clifford had the opportunity to amend her complaint and worked with an attorney, permitting her to amend her complaint in federal court would be futile. Accordingly, these claims fail to state a claim upon which relief may be granted and the undersigned RECOMMENDS the claims be dismissed.

## RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS the district judge DISMISS in part the Amended Complaint (Doc. No. 20). The undersigned recommends the district judge dismiss all claims alleged in the Complaint, except (1) the claim that DewBury violated HUD regulations when modifying Ms. Clifford's lease and (2) the claim that the Housing Authority and DewBury violated eviction requirements when they evicted her in 2014.

All claims brought on behalf of Ms. Clifford's minor child should be dismissed without prejudice, as Ms. Clifford lacks standing to bring them. Ms. Clifford's claims of failure to meet quality housing standards and false statements should be dismissed without prejudice, as this court lacks subject-matter jurisdiction over them. All remaining claims should be dismissed with

prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).  Dismissal of these remaining claims under this provision is appropriate because Ms. Clifford cannot prevail against the defendants on the facts she has alleged.  Where Ms. Clifford has already had the opportunity to amend her complaint once, and she had pro-bono counsel for a time, it would be futile to again give her the opportunity to amend at this juncture.

The court will send copies of this Report and Recommendation to all parties, who are notified of their right to object to the same.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof.  *Id.*  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 31st day of July, 2021.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge